# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Brunswick Division

In the matter of:                              )
                                               )
DURANGO GEORGIA PAPER                          )
        COMPANY,                     )
DURANGO GEORGIA CONVERTING                     )
        CORPORATION, and             )
DURANGO GEORGIA CONVERTING,                    )
        LLC.                         )
(Chapter 11 Case Number <u>02-21669)</u>            )
                                               )
            *Debtors*               )
                                               )
                                               )
                                               )
                                               )
DURANGO GEORGIA PAPER                          )
        COMPANY,                     )
DURANGO GEORGIA CONVERTING                     )
        CORPORATION, and             )
DURANGO GEORGIA CONVERTING,                    )
        LLC.                         )
                                               )
            *Plaintiffs*            )
                                               )
v.                                             )
                                               )
MILTON J. WOOD FIRE                            )
        PROTECTION, INC.             )
                                               )
            *Defendant*             )

Adversary Proceeding

Number <u>04-2252</u>

```
       F I L E D
at  8  O'clock &  51  min  A M
Date   11 | 28 | 05
                       JB

United States Bankruptcy Court
       Savannah, Georgia
```

## <u>ORDER ON MOTION FOR SUMMARY JUDGMENT</u>

      Durango Georgia Paper Company ("Durango"), Durango Georgia Converting Corporation ("Converting Corp."), and Durango Georgia Converting, LLC

("Converting LLC"), by and through their Liquidating Trustee, Bridge Associates, LLC ("Plaintiff" or "Trustee") have filed a Motion for Summary Judgment in the above-captioned Adversary Proceeding against Milton J. Wood Fire Protection, Inc. ("Defendant"). The Defendant has responded by filing its own Motion for Summary Judgment on all of the Plaintiff's claims asserted in its Adversary Proceeding.

## FACTUAL BACKGROUND

On or about June 29, 2005, the Plaintiff and Defendant filed with the Court a Stipulation of Undisputed Facts to Identify the Issues for Determination by the Court ("Stipulation of Facts"). On July 18, 2005, the Court entered a Consent Order Approving the Stipulation of Facts ("Consent Order"). The stipulated facts are as follows:

The Defendant is in the business of providing fire protection services, including the design, installation, and maintenance of fire protection systems in improved real property. On or about July 27, 2001, the Defendant entered into an agreement with Durango to design and install a new fire protection system in a paper machine warehouse at Durango's paper mill in St. Mary's, Georgia ("Agreement"). The Defendant began work under the Agreement on or about August 27, 2001.

The Defendant billed Durango for its work in progress on or about November 15, 2001, in the amount of $12,114.00 and again on or about December 31, 2001,

in the additional amount of $12,114.00.  On February 8, 2002, the Defendant filed or caused to be filed against real property owned by Durango in Camden County, Georgia, a Claim of Lien, and such lien was recorded in Deed Book 858, Pages 258-263 in the Office of the Clerk of the Superior Court of Camden County, Georgia ("First Mechanic's Lien").  With respect to the First Mechanic's Lien, the parties agree and stipulate that the Defendant was paid the amount due under the lien in two equal payments on or about February 26, 2002, and March 4, 2002.   The parties agree and stipulate that the Defendant has executed and filed a Satisfaction and Release of Lien for the First Mechanic's Lien.

The Defendant resumed work under the Agreement on or about July 9, 2002. The Defendant completed the work and last performed services and/or provided goods pursuant to the Agreement with Durango on August 26, 2002.  The Defendant billed Durango in the amount of $24,227.00 on or about August 26, 2002, and payment by Durango was due to the Defendant on September 26, 2002.

On October 29, 2002, unknown to the Defendant, various creditors filed an involuntary petition against Durango under Chapter 7 of Title 11 of the United States Bankruptcy Code in this Court.

On October 30, 2002, the Defendant filed or caused to be filed against real property owned by Durango in Camden County, Georgia, a Claim of Lien, and such lien was

recorded in Deed Book 908, Pages 742-747 in the Office of the Clerk of the Superior Court of Camden County, Georgia ("Second Mechanic's Lien"). The Second Mechanic's Lien was filed and recorded in the office of the Clerk of the Superior Court in Camden County within three months of the Defendant's completion of the work and/or last performing of services and/or providing goods to Durango. The Defendant complied with its performance obligations under the Agreement with Durango for the building, repairing, or improving of Durango's real property for which the Defendant filed its Second Mechanic's Lien. The Defendant sent a copy of the claim of lien by registered or certified mail to Durango as owner of the real property on November 14, 2002. Durango has not paid and currently owes the Defendant the $24,227.00 amount claimed due under the Second Mechanic's Lien, which has been due since September 26, 2002.

On November 19, 2002, Durango consented to the involuntary petition and moved for mandatory conversion of the case to one under Chapter 11 pursuant to 11 U.S.C. § 706(a)(2).[1] Converting Corp. and Converting LLC filed voluntary petitions for relief under Chapter 11 of the Code in this Court.

Having been notified of the bankruptcy, the Defendant did not commence an action in Camden County, Georgia for the recovery of the debt claimed due under the Second Mechanic's Lien within twelve months of the time the debt became due. Instead, the

---

[1] Hereinafter, all section references are to Title 11 of the United State Code

Defendant filed a proof of claim, Proof of Claim No. 461 ("Proof of Claim"), as a secured claim in the amount of $24,227.00 in this Court on or about January 17, 2003. This filing was within the proof of claim bar date of March 19, 2003. Also due to the Bankruptcy Case, the Defendant has not filed a sworn notice of institution of any action against Durango for the recovery of the amount claimed due under the Second Mechanic's Lien within fourteen days after filing such action.

On February 17, 2004, Durango, Converting Corp., and Converting LLC filed their Joint Amended Plan of Liquidation of Debtors and the Official Committee of Unsecured Creditors ("Chapter 11 Plan"). On June 25, 2004, this Court filed the order confirming the Chapter 11 Plan ("Confirmation Order"). Pursuant to the Chapter 11 Plan and Confirmation Order, Durango, Converting Corp., and Converting LLC ("Debtors"), together with their estates ( "Estates") have been substantively consolidated. The Debtors and the Estates continue in existence under the direction and control of the Trustee for the purpose of executing the terms of the Chapter 11 Plan.

The Confirmation Order provides that the Trustee is deemed to be the authorized representative of the Debtors and the Post-Confirmation Debtors as the party-in-interest in the Bankruptcy Case and in all adversary proceedings and contested matters thereunder. The Plaintiffs filed their Complaint against the Defendant in the above-captioned Adversary Proceeding on or about November 8, 2004. The Defendant filed its Answer and

Affirmative Defenses to the Plaintiffs' Complaint on or about January 31, 2005.

The Trustee filed an Objection to Allowance of Claim on or about May 2, 2005, regarding the classification of the claim asserted in the Defendant's Proof of Claim and requested that the contested matter initiated by the filing of such Objection be consolidated with the above-captioned Adversary Proceeding. This Court entered an Order on June 21, 2005, consolidating the Contested Matter with the Adversary Proceeding.

## *ARGUMENTS*

In its Motion for Summary Judgment, the Plaintiffs argue two points. First, the Plaintiffs contend that the Defendant's Second Mechanic's Lien is not enforceable and subject to avoidance by the Trustee because the Defendant did not strictly comply with the requirements of the Georgia Mechanic's and Materialmen's Liens Statute ("Georgia Lien Statute"), O.C.G.A. § 44-14-360, *et seq*. Second, the Plaintiffs argue that the requirements of the Georgia Lien Statute are excepted from the automatic stay pursuant to Section 362(b)(3). Because these requirements were not stayed by Section 362(b)(3), the Defendant could not take advantage of the tolling allowed by Section 108(c)(2), and the Defendant's Second Mechanic's Lien became unenforceable the moment that any deadline expired for taking any of the actions required by the Georgia Lien Statute without the Defendant having complied with such requirements.

In its own Motion for Summary Judgment and its Response in Opposition to the Plaintiffs' Motion for Summary Judgment, the Defendant asserts that the requirements of the Georgia Lien Statute are acts of creation and enforcement and therefore subject to the automatic stay under Section 362(a). The Defendant contends that Section 108(c)(2) tolled its performance of the Georgia Lien Statute's requirements. Therefore, the Defendant argues, its Second Mechanic's Lien cannot be avoided by the Trustee pursuant to Section 545(2).

## DISCUSSION

Under Section 545(2), a trustee has the power to avoid a creditor's statutory lien on a debtor's property to the extent that the lien "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 545(2). In the context of many statutory liens, this power will allow a trustee to invalidate a statutory lien whenever a creditor has not followed the requirements of applicable law to perfect its lien prior to the petition date. 3 Norton Bankruptcy Law and Practice § 55:3. In the present case, the parties agree that the Defendant's lien on Durango's real property in Camden County, Georgia has its basis in the Georgia Lien Statute.

Section 545(2)'s grant of power is limited by Section 546(b)(1), which subjects the trustee's avoidance powers to "any generally applicable law that permits

perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1). If a creditor has a right of delayed perfection under applicable law, Section 546(b)(1) preserves this right and makes it available to the creditor during bankruptcy. Schoonover Electric Co., Inc. v. Enron Corp. (In re Enron Corp.), 294 B.R. 232, 237 (Bankr. S.D.N.Y. 2003). To defeat the trustee's avoidance powers under Section 545(2), however, a creditor must comply with the requirements of applicable nonbankruptcy law to perfect its statutory lien. Turner v. Emmons & Wilson, Inc. (In re Minton Group, Inc.), 28 B.R. 789, 792 (Bankr. S.D.N.Y. 1983).

A lien under the Georgia Lien Statute attaches from the time materials are delivered under a contract or from the time that work commences. Gamble v. Pilcher, 242 Ga. 556, 557, 250 S.E.2d 416, 417 (1978)(citing Picklesimer v. Smith, 164 Ga. 600, 139 S.E. 72 (1927)). To "make good" a lien under the Georgia Lien Statute, it must be "created and declared" through a creditor's fulfillment of five requirements, including: (1) substantial compliance with the contract between the parties; (2) filing a record of a claim of lien within three months after completing the work; (3) at the time of filing for record its claim of lien, sending a copy of the claim of lien by registered or certified mail or statutory overnight delivery to the property owner or contractor; (4) commencing an action for the recovery of the creditor's claim within twelve months from the time it became due; and (5) within fourteen days of filing this action, filing a notice with the clerk of the superior court of the

county in which the lien was filed.  O.C.G.A. §§ 44-14-361.1(a)(1)-(3).

       The parties in the present case do not dispute that the Defendant must fulfill these requirements.  Rather, their dispute is over timing and whether Section 108(c)(2) has tolled the time for the Defendant to fulfill these requirements.[2]  To resolve this dispute, the Court must address the automatic stay.  Under Section 362(a), "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title."  11 U.S.C. §§ 362(a)(4)-(5).  A limitation on Section 362(a) can be found in Section 362(b), under which the automatic stay does not operate as a stay as to "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . . ."  11 U.S.C. § 362(b)(3).

       Therefore, if the automatic stay was in place, the time for the Defendant to satisfy unfulfilled requirements of the Georgia Lien Statute as of the petition date would be tolled by Section 108(c)(2).  As a result, the trustee would not be able to avoid the

---

[2] 11 U.S.C. § 108(c)(2) provides:
"[I]f applicable nonbankruptcy law . . . fixes a period for commencement or continuing a civil action in a court other than a bankruptcy court on a claim against a debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim."

Defendant's Second Mechanic's Lien pursuant to Section 545(2). If the exception of Section 362(b)(3) to the automatic stay applied, however, the time to fulfill these requirements would not be tolled. In that situation, the Defendant would have had to comply with the Georgia Lien Statute's requirements within the statute's time limits. The Defendant's failure to do so would permit the trustee to avoid the Second Mechanic's Lien under Section 545(2). *See* In re Minton Group, Inc., 28 B.R. at 792 ("[C]reditors who have the right to perfect their liens under applicable nonbankruptcy law as of the date of the petition[] prevail over the trustee only if they have perfected their interest in accordance with applicable law, and the perfection relates back to a date that falls before the commencement of the bankruptcy case."). This dispute can be resolved by determining whether the Georgia Lien Statute's requirements are either acts to "create" and "enforce" a lien under Sections 362(a)(4)-(5) or acts to "perfect" a lien under Section 362(b)(3).

Arising under the old Bankruptcy Act, Marietta Baptist Tabernacle v. Tomberlin Associates, Architects, Inc. (In re Marietta Baptist Tabernacle, Inc.), 576 F.2d 1237 (5th Cir. 1978) dealt with the issue of whether a creditor's post-petition filing of a notice of a claim of lien constituted an act to enforce a lien under the previous version of the Georgia Lien Statute and in violation of the Act's Rules of Bankruptcy Procedure Rule 11-

AO 72A
(Rev. 8/82)

44(a).[3]  Citing Section 67-2002, the Fifth Circuit[4] noted that a party seeking to "make good" its lien had to fulfill certain requirements, including filing for record a claim of lien as well as commencing an action for recovery of the amount of the claim within twelve months from the time the claim became due.  Id. at 1238.  Looking to Georgia caselaw, the court determined that "Georgia courts consistently have interpreted these statutory requirements as being *mere conditions precedent to the assertion of a lien*."  Id. (emphasis added).  For example, the Georgia Supreme Court determined that the "doing of work or furnishing of materials gives merely an inchoate lien or the right to acquire a lien, and the statutes prescribe the steps to be taken to perfect such lien."  Id. (quoting Oglethorpe Sav. & Trust Co. v. Morgan, 149 Ga. 787, 792, 102 S.E. 528, 530 (1920)).  As a result, the Fifth Circuit concluded that the Georgia Lien Statute's requirements merely constituted the means to preserve a lien rather than the means to enforce a lien.  Marietta Baptist Tabernacle, 576 F.2d at 1239.  The Eleventh Circuit subsequently relied on Marietta Baptist Tabernacle as the basis for its decision in WWG Indus., Inc. v. United Textiles, Inc. (In re WWG Indus., Inc), 772 F.2d 810 (11th Cir. 1985).

Based on the rationale of Marietta Baptist Tabernacle and WWG, this Court concludes that the requirements of the Georgia Lien Statute are acts of perfecting rather than

---

[3] Rule 11-44(a) provided that a "petition filed under Rule 11-6 or 11-7 shall operate as a stay . . . of any act or the commencement or continuation of any court proceeding to enforce any lien against [the debtor's] property . . . . "

[4] The Eleventh Circuit Court of Appeals has adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

AO 72A
(Rev. 8/82)

creating or enforcing a lien. The Fifth Circuit in <u>Marietta Baptist Tabernacle</u> concluded that the acts under the previous version of the Georgia Lien Statute were not acts of enforcing a lien, and those requirements closely resemble those of the current Georgia Lien Statute. When the Eleventh Circuit determined in <u>WWG</u> that a creditor's post-petition fulfillment of the requirements was sufficient to perfect its lien pursuant to Section 546(b), it is logical to conclude that Section 362(a) should not apply to stay a creditor from fulfilling those requirements. According to Norton:

> The application of the automatic stay to any act to perfect an interest in property is excluded to the extent the trustee's rights and powers are subject to such perfection under Code § 546(b). . . .
>
> If local law requires seizure of the property or the commencement of an action for perfection, the secured creditor is permitted to perfect a secured interest in the property by notice to the trustee within the time fixed by local law for either the seizure of the property or the commencement of the action to perfect. *Since this method for postpetition perfection is specifically authorized under Code § 546(b), it could not be consistently nullified by operation of the automatic stay. This exception merely reinforces postpetition perfection authorized under Code § 546(b).*
>
> 2 Norton Bankruptcy Law and Practice 2d § 36:17 (emphasis added).

The Eleventh Circuit permits post-petition relation back perfection under the Georgia Lien Statute. If that court permitted this perfection pursuant to Section 546(b)

to defeat a trustee's avoidance powers, it is consistent to conclude that the automatic stay cannot apply to prevent a creditor from exercising those Section 546(b) rights. Indeed, it would be illogical to conclude that although a creditor has the right under Section 546(b) and WWG to satisfy the Georgia Lien Statute's requirements post-petition, the creditor is stayed by Section 362(a) from doing so. Rather, if the Eleventh Circuit determined that the creditor in WWG had superior rights in the collateral over the debtor-in-possession due to its post-petition actions, it is consistent and logical to conclude that such a creditor would receive the benefit of Section 362(b) to satisfy those requirements without violating the automatic stay. As a result, this Court concludes that because the Georgia Lien Statute's requirements are acts required of perfecting and not creating or enforcing a lien, creditors are required to abide by the requirements if they wish to receive the protection of relation back perfection under Section 546(b).

This Court is aware of its previous decision in In re Durango Georgia Paper Co., 297 B.R. 316 (Bankr. S.D. Ga. 2003). In that case, the creditor failed to file a notice of action of its lien within fourteen days of the pre-petition commencement of its suit against Durango seeking the recovery of funds and enforcement of a lien pursuant to the Georgia Lien Statute. Id. at 317. This Court cited a Georgia Court of Appeals decision that equated a creditor's inchoate claim of lien with the "right to acquire a lien." Id. at 319 (quoting Middle Ga. Lumber Co. v. Hunt, 53 Ga. App. 578, 186 S.E. 714, 715 (1936)). The Court determined that this language suggested that an inchoate lien is a potential lien that attaches

only if a plaintiff complies with the Georgia Lien Statute's requirements. <u>Durango Georgia</u>, 297 B.R. at 319.  Coupled with the fact that the requirements are meant to "make good" a lien, the Court concluded that the requirements were acts of "creation" rather than "perfection." <u>Id.</u>  Alternatively, the Court stated that the requirements to "make good" a lien could be seen as actions of enforcing a lien. <u>Id.</u> at 319-20.  A lien would be "created" when the work is completed but "enforced" when the Georgia Lien Statute's requirements are satisfied. <u>Id.</u> at 320.  As a result, I determined that the requirements required more than "purely ministerial act[s] of perfecting a previously established consensual lien . . . ." <u>Id.</u>

Despite this previous decision, I am compelled to conclude that in light of a review of the appellate courts' decisions in <u>Marietta Baptist Tabernacle</u> and <u>WWG</u>, the requirements of the Georgia Lien Statute are acts of perfecting a lien rather than creating or enforcing a lien.  The previous decision in March 2003 did not cite nor address these appellate decisions, and the parties in that dispute did not cite either case in their briefs.

In reflecting on the 2003 <u>Durango Georgia</u> decision, I would reaffirm it if I considered it as a case of first impression in this circuit.  However, it is not.  Because of the benefit of binding precedent, I rule in accordance with that precedent.  It is troubling that the effect of this ruling results in inconsistent opinions appearing in this Chapter 11 case.  However, there is no disparate treatment between the creditor in <u>Durango Georgia</u> and the Defendant in the final analysis because of a subsequent order on another issue in the <u>Durango</u>

Georgia case. *See* Order On Motion To Amend Proof Of Claim Filed By J. Walter Construction, Inc., (June 24, 2004)(Dckt. No. 962)(denying J. Walter's motion to amend its claim from unsecured to secured on various unrelated grounds). Had that order not been handed down, it might be necessary to consider whether Durango Georgia, which was not appealed, should be binding either as the law of the case or because the Defendant acted in detrimental reliance upon that holding. However, that did not occur. The Defendant filed its proof of claim on January 17, 2003,[5] and as a result, the Defendant had to satisfy the fourteen day notice requirement on or before January 31, 2003. The Defendant admits to not fulfilling the notice requirement. Defendant's Response In Opposition To Plaintiff's Motion For Summary Judgment, p. 11 (August 1, 2005)(Adversary Proceeding No. 04-02252, Dckt. No. 27). Furthermore, "the mere filing of the bankruptcy claim does not satisfy the statutory requirement that notice be filed with the superior court clerk identifying the pending action." Newton Lumber, 161 Ga. App. at 742.

Because this Court's previous decision concerning the Georgia Lien Statute was issued on March 31, 2003, the Defendant cannot argue that it detrimentally relied on Durango Georgia in the belief that its fulfillment of the statute's requirements was stayed and the time for fulfilling them was tolled. As a result, the appellate courts' decisions in Marietta Baptist Tabernacle and WWG must be observed.

---

[5] Under Georgia law, an "action to enforce the lien against the owner need not be instituted within the 12-month statutory period if a claim has been filed by the materialman in the [debtor's] bankruptcy proceedings during that time." Newton Lumber & Supply, Inc. v. Crumbley, 161 Ga. App. 741, 742, 290 S.E.2d 114, 115 (1982).

AO 72A
(Rev. 8/82)

## O R D E R

Pursuant to the foregoing IT IS THE ORDER OF THIS COURT that because the Defendant failed to file a notice with the clerk of the Superior Court of Camden County within fourteen days of filing its proof of claim on or about January 17, 2003, the Plaintiff's Motion for Summary Judgment is GRANTED, and the Defendant's Motion for Summary Judgment is DENIED.   The Trustee may avoid the Defendant's Second Mechanic's Lien pursuant to Section 545(2) and reclassify the Defendant's proof of claim as a general unsecured claim in the amount of $24,227.00.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 23 day of November, 2005.

cc:  Debtor ATTY STRAIN
     Debtor Atty McCALLUM
     Plaintiff WIND DOWN / BRIDGE ASSOC.
     Pltf Atty OLACK (FOR DURANGO GA PAPER CO)
     Defendant ATTY WHITWORTH
     Deft Atty TUCKER/ MALONEY
     Trustee
     U. S. Trustee JAMES
        11/28/05
        ftb

AO 72A
(Rev. 8/82)